UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ELIZABETH A. SCHWANDT,

Plaintiff,

Hon. Robert J. Jonker

v.

Case No. 2:25-cv-00100

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
___________________________________/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of Social Security appeals, the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v.*

*Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial-evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 52 years of age on her date last insured. (ECF No. 3-2, PageID.49; ECF No. 3-5, PageID.211). She successfully completed high school and

worked previously as a peer specialist. (ECF No. 3-2, PageID.49). Plaintiff applied for DIB benefits on March 27, 2022, alleging that she had been disabled since October 9, 2020, due post-traumatic stress disorder, major depressive disorder, anxiety, GERD, "cognitive problems" on the "left side of [the] brain," degenerative disc disease, diabetes, hypothyroidism, and IBS. (ECF No. 3-6, PageID.267, 286).

Plaintiff's application was denied initially and again upon reconsideration, after which time she requested a hearing before an Administrative Law Judge (ALJ). (ECF No. 3-2, PageID.31; ECF No. 3-4, PageID.119, 131, 134). Following an administrative hearing, ALJ Donald D'Amato, in a partially favorable opinion dated November 20, 2024, determined that Plaintiff did not qualify for disability benefits between the alleged onset date and August 31, 2023, but that Plaintiff was disabled as of September 1, 2023. (ECF No. 3-2, PageID.51). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (ECF No. 3-2, PageID.15). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision. (ECF No. 3-4, PageID.134).

Plaintiff's insured status expired on December 31, 2025. (ECF No. 3-2, PageID.33); *see also* 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS

**I. Disability Framework**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from both non-exertional and exertional impairments, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate that she is entitled to disability benefits and that she satisfies her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure—the point at which his residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from degenerative disc disease, lumbar and cervical spine; status-post lumbar discectomy; coronary artery disease ("CAD"); prinzmetal angina; gastroesophageal reflux disease ("GERD"); cervicogenic

and migraine headaches; right carpal tunnel syndrome ("CTS"); osteoarthritis and greater trochanteric bursitis, right hip; recurrent kidney stones/nephrolithiasis; irritable bowel syndrome with constipation ("IBS-C"); idiopathic peripheral neuropathy; post-traumatic stress disorder ("PTSD"); major depressive disorder; neurocognitive disorder; and attention deficit hyperactivity disorder ("ADHD"), severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (ECF No. 3-2, PageID.34).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff, through her date last insured until September 1, 2023, retained the ability to perform light work as defined in 20 CFR 404.1567(b) subject to the following limitations:

> [S]he requires work limited to simple routine tasks with no set hourly quotas; no more than occasional interactive contact with coworkers and supervisors; no direct interactive contact with the public; no more than occasional changes in the routine work setting; can lift and/or carry 10 pounds frequently and 20 pounds occasionally (from very little up to 1/3 of an 8-hour workday); can stand and/or walk (with normal breaks) for 6 hours in an eight-hour workday; can sit (with normal breaks) for 6 hours in an eight-hour workday, but requires the opportunity to sit for 15 minutes at one time before needing to stand for 2 minutes before resuming sitting, so long as she is not off task; can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions for two-thirds of an 8-hour workday; can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching for two-thirds of an 8-hour workday; needs to avoid hazards such as moving machinery and unprotected heights, but does not need to avoid hazards typically found in the workplace such as boxes on the floor

> or ajar doors; no more than occasional exposure to blinking or flashing lights; no more than frequent concentrated exposure to direct sunlight; no more than occasional exposure to very loud noises (SCO Code 5 level noise that is on par with a rock concert or jack hammer); job responsibilities do not include the use of hand-held vibrating or power tools; needs to be restricted to a work environment with good ventilation that allows the claimant to avoid frequent concentrated exposure to extreme heat, extreme cold, and high humidity; and she can perform occasionally: climbing stairs with handrails, stooping, crouching, kneeling, and crawling, but she needs to avoid climbing ladders, scaffolds, and ropes.

(ECF No. 3-2, PageID.44-45). The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs that Plaintiff can perform notwithstanding her limitations. *O'Neal*, 799 Fed. Appx. at 316. (ECF No. 3-2, PageID.50). In satisfying this burden, the ALJ may rely on a vocational expert's testimony. *Id.*

In this case, a vocational expert testified that there existed approximately one million jobs in the national economy which an individual with Plaintiff's RFC could perform. (ECF No. 3-2, PageID.50). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant' "). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits between her alleged onset date and August 31, 2023.

**II. Analysis**

Because Plaintiff filed her application after March 27, 2017, the ALJ evaluated the opinions in question pursuant to 20 C.F.R. § 416.920c. This regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. § 416.920c(a). Instead, the ALJ is required to articulate his determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 416.920c(b)(1).

These factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.920c(1)-(5). The ALJ must explain his consideration of the supportability and consistency factors, but absent circumstances not present here, the ALJ is not required to explain how the remaining factors were considered. 20 C.F.R. § 416.920c(b)(2), (3). The regulations define "supportability" and "consistency" as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more

> persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).

**A. Medical Source Opinion of NP Spickerman**

As part of her disability application, Plaintiff submitted a report of a consultative medical exam conducted by Carole Spickerman, NP-C, who opined that Plaintiff experienced greater functional limitations than the ALJ recognized. (ECF No. 4-36, PageID.7841-47). Specifically, NP Spickerman reported that, upon examination, Plaintiff had full muscle strength at 5/5, could tandem walk, stand from a seated position, maintain balance in a standing position, stand on heels/toes, and had a normal gait. (ECF No. 4-36, PageID.7843-44). NP Spickerman opined that Plaintiff could not lift or carry any pounds of weight but that she was able to push and pull; Plaintiff could sit, stand for ten minutes, and walk half of a mile with pain; she had postural "limitations due to pain" when climbing, stooping, bending, balancing, crawling, kneeing and/or crouching; she had "no limitations" regarding handling, fingering, gripping, and/or feeling; she had overhead, lateral, and forward reaching "limitations due to pain"; she had "no limitations" with her vision, hearing, and speech; and she had "increased pain" to environmental exposures like extreme heat and cold, wetness, humidity, noise, vibration, and hazards. (ECF No. 4-36, PageID.7844).

The ALJ found that NP Spickerman's opinion was "not persuasive." (ECF No. 3-2, PageID.42-43). In his analysis, the ALJ noted that NP Spickerman's

opinion on Plaintiff's exertional limitations was not supported by her own exam findings, that "[o]verall treatment records since the alleged onset date also show no deficits with muscle/motor strength or gait," and that her opinions regarding Plaintiff's limitations with postural activity, reaching, and environmental exposures were "vague and do not specify the extent of any limitation." (ECF No. 3-2, PageID.43).

Plaintiff argues that she is entitled to relief because the ALJ failed to properly evaluate NP Spickerman's opinion by not "articulat[ing] whether the opinion was consistent with the record." (ECF No. 13, PageID.9784). The undersigned disagrees.

As stated above, the ALJ found NP Spickerman's opined limitations not persuasive, in part, because "[o]verall treatment records since the alleged onset date also show no deficits with muscle/motor strength or gait." (ECF No. 3-2, PageID.43). The ALJ did not cite to any records in support of his statement, which is not per se error because a reviewing court reads ALJ's decision as a whole. *See Taylor v. Kijakazi*, No. 1:20-cv-01121, 2021 WL 4477865, *8 (N.D. Ohio Sept. 30, 2021); *see also Njegovan v. Comm'r of Soc. Sec. Admin.*, No. 5:21-cv-00002, 2022 WL 1521910, at *4 (N.D. Ohio May 13, 2022) ("As long as the ALJ discussed the supportability and consistency of the opinion and supported his conclusions with substantial evidence within his decision, the Court will not disturb his decision.").

Upon review of the ALJ's decision, the ALJ notes the following treatment records that discuss normal muscle strength and normal gait in his review of the

evidence between the alleged onset date and the date of NP Spickerman's opinion. (ECF No. 3-2, PageID.40-42). Plaintiff displayed no strength deficits at a physical exam in May 2021. (ECF No. 3-10, PageID.1381). In November 2021 and October 2022, upon examination, Plaintiff' had a normal gait and full muscle strength. (ECF No. 4-3, PageID.6497; ECF No. 10-19, PageID.9229-30). At another exam in October 2022, Plaintiff demonstrated no strength deficits. (ECF No. 10-18, PageID.9198-99). In November 2022, Plaintiff had a normal physical exam with "equal strength" and "no gross abnormality" of her extremities. (ECF No. 10-18, PageID.9181).

Although it would have been preferrable for the ALJ to specifically discuss these records while analyzing the consistency of NP Spickerman's opinion, the undersigned nevertheless concludes that the ALJ adequately addressed the consistency factor by noting that NP Spickerman's opinions were not consistent with other treatment records from the relevant period and discussing these records elsewhere in the decision. *See Merrell v. Comm'r of Soc. Sec.*, No. 1:20-cv-769, 2021 WL 1222667, at *7 (N.D. Ohio Mar. 16, 2021), *report and recommendation adopted*, No. 1:20 CV 769, 2021 WL 1214809 (N.D. Ohio Mar. 31, 2021) (holding that ALJ's decision to discount weight given to opinion from treating physician was supported by substantial evidence where opinion was inconsistent with evidence in the record). Additionally, "[w]hen a treating physician offers a conclusory opinion concerning a claimant's condition, the ALJ need not credit that view . . . ." *Kidd v. Comm'r of*

*Soc. Sec.*, 283 F. App'x 336, 340 (6th Cir. 2008). Accordingly, this claim of error is without merit.

**B. Medical Source Opinion of Dr. Kilpela**

Plaintiff underwent a consultative psychiatric/psychological exam conducted by Dr. Gary S. Kilpela, Psy.D., whom afterwards opined the following:

> Her ability to understand and remember instructions is moderately impaired. Her ability to carry out instructions is moderately to markedly impaired due to her memory issues. Her ability to interact with the general public and peers is extremely impaired due to her PTSD. Her ability to adapt to changes in a work setting is markedly impaired at present. Her ability to use public transportation is moderately impaired.

(ECF No. 4-36, PageID.7851). The ALJ found Dr. Kilpela's statement not persuasive because "the overall record does not support marked or extreme levels of limitation as described by Dr. Kilpela." (ECF No. 3-2, PageID.46). Further,

> [i]n particular, with regard to carrying out instructions, despite the noted memory issues demonstrated on this exam, the overall record is not consistent with this presentation, particularly aforementioned follow-ups with Dr. VanHolla and Dr. DeGrand (whom the claimant has been seeing multiple times a month since the alleged onset date), which show the claimant consistently demonstrates normal memory on mental status exams. Extreme impairments in interacting with others due to PTSD is also not supported by records, including her ability to travel (8F/74, 69, 19, 12; 40F/36; 42F/58, 53; 38F/150; 42F/44, 19) and the follow-ups from Dr. VanHolla noting the claimant consistently demonstrates a cooperative and personable attitude on mental status exams (8F/144, 22; 7F/495, 447, 381; 20F/92; 7F/303; 19F/342; 38F/81, 16; 42F/87, 22). There is also no pervasive evidence supporting marked impairment in her ability to adapt to workplace changes and Dr. Kilpela provided no specific reason for this.

(ECF No. 3-2, PageID.46-47).

Plaintiff contends that the ALJ erred in evaluating Dr. Kilpela's opinion but fails to articulate how she believed the ALJ erred. Nevertheless, a review of the

record reveals that the ALJ reasonably determined that Dr. Kilpela's opinion was not persuasive based on deficiencies in both supportability and consistency.

An ALJ's findings are not reversable merely because Plaintiff can point to substantial evidence in the record to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The ALJ retains a "zone of choice" within which to act, and if he [or she] does not stray beyond its borders, the Court will not interfere. *Id.* If the ALJ's decision is supported by substantial evidence, it must be affirmed, even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Sec. of Health and Human Servs.*, 658 F.2d 437, 439 (6th Cir. 1981).

First, as to supportability, the ALJ noted that although diagnosing Plaintiff with PTSD, major depressive disorder, and a mild neurocognitive disorder due to past strokes, Dr. Kilpela reported minimal abnormalities upon examination of Plaintiff. (ECF No. 3-2, PageID.46). For example, Plaintiff's mood was anxious and her eye contact was "intermittent," but she "spoke in a normal manner," "had a decent fund of vocabulary," and her intelligence was estimated to be in the "average to high-average ranges at best." (ECF No. 4-36, PageID.7850). Further, Plaintiff displayed "no overt evidence of any psychotic or delusional processing," "[s]he did not appear to be responding to or experiencing any internal stimuli," "[h]er attention span was within normal limits," "she did not require prompting to stay on task or to switch tasks appropriately," "[s]he was oriented in all spheres," and "[s]he denied any recent suicidal or homicidal ideation." (*Id.*). Additionally, Plaintiff's

immediate and short-term memory were "very poor," and her long-term memory was suspect, but her "procedural memory was within normal limits": she named two of the past four presidents, named five large cities, and was able to perform serial seven tasks correctly down to 65. (*Id.*). Her abstract and conceptual reasoning abilities were also "intact." (*Id.*).

Second, as to consistency, the ALJ noted that "the overall record does not support marked or extreme levels of limitation as described by Dr. Kilpela." (*Id.*). Specifically, the ALJ remarked that the overall record is not consistent with the presentation of Plaintiff's ability to carry out instructions. (ECF No. 3-2, PageID.46). The ALJ points to a litany of treatment records from the alleged onset date through 2024, all reporting normal memory on mental status exams from two providers, Dr. David B. Van Holla, MD, (*see*, *e.g.*, ECF No. 3-11, PageID.1610-12 (October 2020); ECF No. 3-11, PageID.1489 (March 2021); ECF No. 3-10, PageID.1461 (April 2021); ECF No. 3-10, PageID.1413 (May 2021); ECF No. 3-10, PageID.1347 (June 2021); ECF No. 3-10, PageID.1270 (January 2022); ECF No. 4-1, PageID.6393 (April 2022); ECF No. 3-35, PageID.6221 (June 2022); ECF No. 10-18, PageID.9158 (December 2022); ECF No. 10-17, PageID.9092 (April 2023); ECF No. 10-23, PageID.9693 (February 2024); ECF No. 10-23, PageID.9628 (August 2024)) and Dr. Teri L. DeGrand, Psy.D. (*see*, *e.g.*,; ECF No. 3-11, PageID.1628 (October 2020), PageID.1590 (November 2020), PageID.1565 (December 2020), PageID.1538 (January 2021), PageID.1521 (February 2021), PageID.1489 (March 2021); ECF No. 3-10, PageID.1442 (April 2021), PageID.1369 (May 2021), PageID.1340 (June 2021);

ECF No. 4-4, PageID.6533 (July 2021), PageID.6522 (August 2021), PageID.6516 (September 2021), PageID.6499 (October 2021); ECF No. 4-3, PageID.6472 (November 2021); ECF No. 3-10, PageID.1283 (December 2021); ECF No. 4-2, PageID.6441 (January 2022), PageID.6431 (February 2022), PageID.6426 (March 2022); ECF No. 4-1, PageID.6393 (April 2022)).

The ALJ then noted that treatment records do not support an extreme impairment in Plaintiff's ability to interact with others due to her PTSD, in part, because of her ability to travel (ECF No. 3-11, PageID.1478, 1485, 1535, 1540; ECF No. 10-21, PageID.9364; ECF No. 10-23, PageID.9657, 9662; ECF No. 10-19, PageID.9226; ECF No. 10-23, PageID.9623, 9648) and her consistently cooperative and personable attitude during mental status exams with Dr. VanHolla (ECF No. 3-11, PageID.1488, 1610; ECF No. 3-10, PageID.1268, 1346, 1412, 1460; ECF No. 4-3, PageID.6485; ECF No. 3-35, PageID.6231; ECF No. 10-18, PageID.9156; ECF No. 10-17, PageID.9090; ECF No. 10-23, PageID.9626, 9691). Last, the ALJ notes that there is "no pervasive evidence supporting marked impairment in her ability to adapt to workplace changes and Dr. Kilpela provided no specific reason for this." (ECF No. 3-2, PageID.47). The undersigned agrees upon review of the record.

The ALJ thoroughly discussed Plaintiff's impairments, identified unsupported conclusions, and adequately explained the persuasiveness of Dr. Kipela's opinion. That satisfies the ALJ's duties and, in turn, the Court's limited standard of review. *See Biestek v. Berryhill*, 587 U.S. 97, 108 (2019) (Substantial

evidence as a standard of review "defers to the presiding ALJ, who has seen the hearing up close.").

**C. Medical Source Opinion of Dr. DeGrand**

Plaintiff also asserts that the ALJ erred in evaluating Dr. DeGrand's opinion but again fails to articulate how she believed the ALJ erred.

Dr. DeGrand filled out a medical source statement regarding Plaintiff's mental impairments as follows. Dr. DeGrand rated Plaintiff as being "unable to meet competitive standards" in a number of work-related activities related to mental abilities and aptitudes needed to do unskilled, semi-skilled, and skilled work. (ECF No. 10-9, PageID.8459-60). Dr. DeGrand rated Plaintiff as having "no useful ability to function" with regard to completing a normal workday and workweek without interruptions from psychologically based symptoms. (ECF No. 10-9, PageID.8459). He also opined that she would be off task 25 percent of the workday (ECF No. 10-9, PageID.8458) and that she would be absent from work more than four days a month (ECF No. 10-9, PageID.8460).

The ALJ found Dr. DeGrand's statement not persuasive because "it is not supported by his treatment records, which year after year since the alleged onset date, show mostly normal mental status exams." (ECF No. 3-2, PageID.48). The ALJ continued:

> In particular, as noted above, exams from Dr. DeGrand reflect instances of mood (i.e. depressed, anxious, angry) and affect (i.e. labile) abnormalities, but otherwise, findings are normal and show intact cognitive functioning, as the claimant is oriented x4 with normal attention, concentration, and memory, goal-oriented thought process,

> average fund of knowledge, and adequate judgment and insight (see for example 8F/162-163, 72-73; 7F/309-310; 38F/68-70; 42F/120-121). These findings are also consistent with exams from Dr. VanHolla (the claimant's treating psychiatrist), which show normal thought process, normal attention, normal memory, orientation x4, and intact insight and judgment (see for example 8F/144-146, 22-23; 7F/303-305; 38F/16-18; 42F/87-89). These objective findings support a finding that the claimant is capable of simple work (as described in the RFC above) despite her mental impairments. Additionally, when asked to explain limitations falling in the 3 most limited categories and include the medical/clinical findings that support his assessment (30F/2-3), Dr. DeGrand provided no information and left this portion of the assessment blank.

(ECF No. 3-2, PageID.48-49).

Upon review, the ALJ reasonably determined that Dr. DeGrand's opinion was not persuasive based on deficiencies in both supportability and consistency.

First, substantial evidence supports the ALJ's findings as to supportability. Dr. DeGrand's numerous exams of Plaintiff reflect findings that are largely normal, spanning across several years from the alleged onset date through 2023. (ECF No. 3-11, PageID.1538-39, 1628-29; ECF No. 3-10, PageID.1274-75; ECF No. 10-17, PageID.9142-44; ECF No. 10-23, PageID.9724-25). And in 2024, as the ALJ notes, Plaintiff's exams were "completely unremarkable." (ECF No. 10-23, PageID.9618-20, 9639-40, 9647-48, 9651-52, 9656-57, 9661-62, 9665-67, 9676-78, 9683-84, 9703-04, 9724-25).

Second, substantial evidence also supports the ALJ's analysis that Dr. DeGrand's opined limitations were inconsistent with other evidence. As the ALJ notes, treatment records from Dr. Van Holla demonstrate that Plaintiff had normal thought process, normal attention, normal memory, orientation x4, and intact

insight and judgment. (ECF No. 3-11, PageID.1488-89, 1610; ECF No. 3-10, PageID.1268-70; ECF No. 10-17, PageID.9090-92; ECF No. 10-23, PageID.9691-93).

In sum, the ALJ provided specific, record-based reasons for determining that Dr. DeGrand's opinions were unpersuasive. Plaintiff's contention of error, therefore, lacks merit.

**D. Subjective Symptoms**

According to SSR 16-3p, an ALJ must analyze the consistency of a plaintiff's statements with other record evidence, considering his or her testimony about pain or other symptoms with the rest of the relevant evidence in the record and other factors. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). This analysis and the conclusions drawn from it—formerly termed a credibility determination—can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a); SSR 16-3p, 2016 WL 1119029, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029, at *2; *Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-

related limitations by determining the intensity, persistence, and limiting effects of the plaintiff's symptoms. SSR 16-3p, 2016 WL 1119029, at *6.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a plaintiff's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). The absence of objective, confirming evidence obligates the ALJ to consider the following factors:

> (i) [D]aily activities;
>
> (ii) The location, duration, frequency, and intensity of . . . pain;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . take[n] to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, . . . received for relief of . . . pain . . . ;
>
> (vi) Any measures . . . used to relieve . . . pain; and
>
> (vii) Other factors . . . .

20 C.F.R. § 404.1529(c)(3), 416.929(c)(3); see also *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 16-3p, 2016 WL 1119029, at *7.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility" as long as the assessment is supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); see also *Saunders v. Kijakzi*, No. 20-cv-12210, 2022 WL 885838,

at *3 (E.D. Mich. Mar. 25, 2022) (" "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.' " (quoting *Rogers*, 486 F.3d at 247)).

Specifically, Plaintiff takes issue with the ALJ using the following language:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision.

(ECF No. 3-2, PageID.39). True, this is boilerplate language used in almost every ALJ decision. See *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 260 (6th Cir. 2015). And it is also true that courts have found this boilerplate language insufficient—on its own—"because it 'yields no clue to what weight the trier of fact gave the testimony' " or failed to link to evidence in the record or tailor the paragraph to the facts at hand. *Bowers v. Colvin*, No. 13-cv-14875, 2015 WL 12670523, at *14 (E.D. Mich. Oct. 14, 2015) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 644-46 (7th Cir. 2012)). However, the "chief concern with the popularity of this template . . . is the risk that an ALJ will mistakenly believe it sufficient to explain a credibility finding, as opposed to merely introducing or summarizing one." *Cox*, 615 F. App'x at 260. Thus, using this boilerplate is not error when the ALJ "provide[s] a 'thorough explanation elsewhere of his reasons for doubting [the claimant's] account.' " *Id.* (quoting *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014)); see also *Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 174 (6th Cir. 2016) ("[U]sage of

the template to introduce the ALJ's credibility finding is not by itself erroneous. Here, the ALJ provided an adequate explanation of the adverse credibility finding, pointing to, among other things, Sorrell's inconsistent statements, and her failure to provide medical evidence supporting her claims regarding the intensity and pervasiveness of her pain.").

Here, the ALJ did not simply rely on boilerplate language in rejecting Plaintiff's testimony. Instead, he used the language to introduce and summarize his findings. Neither did the ALJ discount Plaintiff's subjective symptoms solely based on the objective evidence, as Plaintiff argues. (ECF No. 13, PageID.9793-95). The ALJ properly considered Plaintiff's symptoms and discussed, among other things, Plaintiff's treatments, including medication, both inpatient and outpatient treatment programs, and therapy, and her activities of daily living. (ECF No. 3-2, PageID.38-39, 45-47). The ALJ built a logical bridge for discounting Plaintiff's reported symptoms, which is supported by substantial evidence in the record. See *Kreilach v. Comm'r of Soc. Sec.*, 621 F. Supp. 3d 836, 844 (N.D. Ohio 2022) ("[A]s a general matter, an ALJ is obligated to build an 'accurate and logical bridge' from the evidence to his conclusions.") (quoting *Ripley v. Comm'r of Soc. Sec.*, 415 F. Supp. 3d 752, 767 (N.D. Ohio 2019)). Accordingly, Plaintiff has failed to show error.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: July 30, 2026

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge